238-18/WJP
FREEHILL HOGAN & MAHAR LLP
*Attorneys for Plaintiff, Mitsui Foods, Inc.*
549 Summit Avenue
Jersey City, New Jersey 07306-2701
(T): 973-623-5514 | (F): 973-623-3813
William J. Pallas, Esq. (054011994)
William J. Yost, Esq. (075332014)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MITSUI FOODS, INC., <br><br> Plaintiff, <br><br> -against- <br><br> SYNERGIE CANADA, INC., <br><br> Defendant. | 19-cv- <br><br><br> **COMPLAINT** |

Plaintiff, Mitsui Foods, Inc., by and through its undersigned counsel, files this Complaint against Defendant, Synergie Canada, Inc., and alleges as follows:

**THE PARTIES, JURISDICTION AND VENUE**

1.  This Court has jurisdiction under 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties. This is an action for damages, exclusive of interest and costs, which exceeds the sum of seventy-five thousand dollars ($75,000.00).

2.  Jurisdiction is also proper under 28 U.S.C. §1333 as this action involves admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

3.  Plaintiff, Mitsui Foods, Inc. ("MFI" or "Plaintiff"), is a New Jersey company with its principal place of business located in Norwood, New Jersey.

4.  Defendant, Synergie Canada, Inc. ("Synergie" or "Defendant"), is a Canadian company with its principal place of business located in Blainville, Quebec, Canada. Synergie is

subject to personal jurisdiction in this Court because Synergie purposefully availed itself to jurisdiction in New Jersey by travelling to the state to meet with MFI and sending voluminous communications to MFI in the state concerning entry of the contract that is the subject of this action.

5.  Venue is proper in this district because a substantial part of the contractual negotiations leading up to entry of the subject contract took place in this district.

## GENERAL ALLEGATIONS

6.  On or around May 17, 2017, Synergie offered MFI a "door-to-door" transportation service for the carriage of bulk liquid merchandise, specifically, orange juice ("Loads"), between MFI's supplier in Mexico to several MFI's clients located in Florida.

7.  On May 17, 2017, a representative from Synergie met with MFI's representative at MFI's offices in New Jersey to discuss the proposed project.

8.  On July 27, 2017, a Mutual Non-Disclosure Agreement was executed by MFI and Synergie in order to begin negotiation of the terms and conditions of the transportation of the Loads between Mexico and Florida (the "NDA").

9.  Between July and September 2017, MFI and Synergie entered into negotiations to outline the terms for the transportation services of the Loads to be provided by Synergie.

10.  On September 13, 2017, a representative from Synergie again traveled to MFI's offices in New Jersey to further negotiate and discuss the parameters of the project.

11.  On September 22, 2017, Synergie submitted a quotation for the transportation services of the Loads between Mexico and Florida along with a promotional brochure for what they called the "Big Red Liquiride ™ Solution – Mexico to Florida Project" the ("Synergie Brochure"). A copy of the Synergie Brochure is attached as **Exhibit A**.

12. Prior to starting providing its transportation services, Synergie made several material representations to MFI regarding the capabilities to manage and transport the Loads. In particular, the Synergie Brochure expressly stated that Synergie provides "logistics services and manages the entirety of your supply chain worldwide." The Synergie Brochure further represented that Synergie "offers door-to-door solutions for an effective and secure transport solution for your bulk liquid merchandise." *See* **Exhibit A**.

13. Synergie expressly represented to MFI its ability to provide "transportation capacities and merchandise management" for the transport of MFI's Loads. See **Exhibit A**.

14. Synergie further held itself out to MFI as providing "expertise in implementing and integrating multi level logistics processes" and a "tailored, turnkey, door-to-door logistics solution" for the transport of MFI's Loads. See **Exhibit A**.

15. Synergie further held itself out as providing expertise in the transport of refrigerated bulk liquid cargo utilizing its "Big Red Liquiride ™" technology. See **Exhibit A**.

16. In December 2017, when the season for export of orange juice from Mexico started, MFI contracted with Synergie to commence use of its transportation services.

17. Among the terms of transportation services to be provided, Synergie was to: (1) arrange for, manage, implement and ensure proper and timely "door-to-door" refrigerated transport of the Loads; (2) customs clearances; and (3) complete delivery within 20 days of loading at the supplier's facility.

18. At all relevant times herein, Synergie was aware of the time sensitive nature and characteristics of the Loads and that it was critical to ensure timely "door to door" transport and delivery of same.

507410.1

19. At all relevant times herein, Synergie was aware of the refrigeration requirements of the Loads and that it was critical to ensure proper temperature control of the Loads throughout the entire "door to door" transport of same.

20. On or around January 2018, Synergie started carrying the Loads from MFI's supplier's facility through the port of loading of Tampico, Mexico to one of two ports of discharge in Florida, namely Tampa and Port Manatee, for final delivery to MFI's clients in Florida.

21. From the start of shipments in January 2018, several issues were reported with Synergie's transportation services of the Loads, including, but not limited to, Synergie's failure to: (1) ensure proper and timely scheduling of "door to door" transport of the Loads from Mexico to MFI's clients in Florida; (2) ensure that "door to door" transport of the Loads was conducted in a proper and timely manner within the twenty (20) day delivery window agreed to by the parties; (3) secure sufficient shipping containers to ensure proper and timely "door to door" transport of the Loads; (4) coordinate the customs clearance of the cargo between Mexico and the United States; (5) ensure that proper refrigeration of the product was maintained throughout the entire "door to door" transport of the Loads, including, but not limited to, ensuring that generators were affixed to the containers for the road portion of the carriage and throughout the entire time the Loads remained in the containers; and (6) timely communicate with MFI regarding the location of the containers and on-going events in order to allow MFI a better reaction time and report same to its clients.

22. Between January and April 2018, a total of 6.66 Loads were rejected by MFI's client in Florida at delivery due to fermentation while 6 additional Loads were left at the port of loading of Coatzacoalcos, Mexico for over 20 days and were not shipped due to the anticipated rejection of the product by MFI's client.

23.   Synergie's failure to timely transport and adequately refrigerate MFI's Loads in accordance with the agreed terms and representations regarding the "Mexico to Florida Project" caused MFI damages.

24.   MFI has sustained damages in an amount exceeding $389,881.91 as nearly as same can be estimated, and no part of which has been paid by the Defendant. MFI reserves the right to amend this amount at the time of trial.

## COUNT I
## BREACH OF CONTRACT

25.   Plaintiff re-alleges and incorporates Paragraphs 1 through 24 as if fully stated herein.

26.   Pursuant to the contract between the parties, and for good consideration paid, Defendant was obligated to arrange for, manage, implement and otherwise ensure proper and timely "door to door" transport and delivery of the Loads from Mexico to MFI's clients in Florida. See **Exhibit A**. Defendant agreed to provide various services to MFI for the "effective and secure" transport of the Loads, including, but not limited to, transportation capacities, logistics services, refrigeration and customs clearance.   See **Exhibit A**.

27.   Defendant breached the agreement for the transportation and delivery of goods by, *inter alia*, failing to: (1) ensure proper and timely scheduling of "door to door" transport of the Loads from Mexico to MFI's clients in Florida; (2) ensure that "door to door" transport of the Loads was conducted in a proper and timely manner within the twenty (20) day delivery window agreed to by the parties; (3) secure sufficient shipping containers to ensure proper and timely "door to door" transport of the Loads; (4) coordinate the customs clearance of the cargo between Mexico and the United States; (5) ensure that proper refrigeration of the product was maintained throughout the entire "door to door" transport of the Loads, including, but not limited to,

ensuring that generators were affixed to the containers for the road portion of the carriage and throughout the entire time the Loads remained in the containers; and (6) timely communicate with MFI regarding the location of the containers and on-going events in order to allow MFI a better reaction time and report same to its clients.

28. As a proximate result of the Defendant's breach Plaintiff has been damaged in an amount exceeding $389,881.91 and such other amounts to be proved at trial.

## COUNT II
## NEGLIGENCE

29. Plaintiff re-alleges and incorporates Paragraphs 1 through 28 as if fully stated herein.

30. At all relevant times herein, Defendant was aware of the need to ensure proper and timely transport of the Loads.

31. At all relevant times herein, Defendant was aware of the need to maintain proper temperature control of the Loads.

32. At all relevant times herein, Defendant had a duty to arrange for, manage, implement and ensure proper and timely "door-to-door" refrigerated transport of the Loads.

33. At all relevant times herein, Defendant was in possession of the Loads and agreed to deliver same to Plaintiff's clients in Florida in good order and condition.

34. At all relevant times herein, Defendant owed MFI a duty to properly care for, maintain and safeguard the Loads.

35. Defendant was negligent in that it failed to exercise ordinary and reasonable care in providing for and ensuring the proper and timely "door-to-door" refrigerated transport of the Loads. Defendant's negligence included, but was not limited to, the failure to: (1) ensure proper and timely scheduling of "door to door" transport of the Loads from Mexico to MFI's clients in

Florida; (2) ensure that "door to door" transport of the Loads was conducted in a proper and timely manner within the twenty (20) day delivery window agreed to by the parties; (3) secure sufficient shipping containers to ensure proper and timely "door to door" transport of the Loads; (4) coordinate the customs clearance of the cargo between Mexico and the United States; (5) ensure that proper refrigeration of the product was maintained throughout the entire "door to door" transport of the Loads, including, but not limited to, ensuring that generators were affixed to the containers for the road portion of the carriage and throughout the entire time the Loads remained in the containers; and (6) timely communicate with MFI regarding the location of the containers and on-going events in order to allow MFI a better reaction time and report same to its clients. .

36. As a proximate result of the Defendant's negligence, Plaintiff has been damaged in an amount exceeding $389,881.91 and such other amounts to be proved at trial.

## COUNT III
## CARRIAGE OF GOODS BY SEA ACT

37. Plaintiff re-alleges and incorporates Paragraph 1 through 36 as if fully stated herein.

38. Defendant is an entity subject to the Carriage of Goods by Sea Act of 1936, codified 46 U.S.C. §30701, *et seq.* ("COGSA"), which governs claims for loss of or damage to goods during their shipment to and from United States ports.

39. Defendant was in possession of the Loads and was to transport them from Mexico to Florida.

40. Due to Defendant's acts and/or omissions several Loads were damaged at delivery and/or not delivered.

41. As a proximate result of the Defendant's breach the Plaintiff has been damaged in an amount exceeding $389,881.91 and such other amounts to be proved at trial.

## COUNT IV
## CARMACK AMENDMENT

42. Plaintiff re-alleges and incorporates Paragraphs 1 through 41 as if fully stated herein.

43. Defendant is an entity subject to the Carmack Amendment, codified 49 U.S.C. § 14706, which governs claims for loss of or damage to goods during interstate shipment.

44. Defendant was in possession of the Loads and was to transport them from Mexico to Florida.

45. Due to Defendant's acts and/or omissions several Loads were damaged at delivery and/or not delivered.

46. As a proximate result of the Defendant's non-delivery the Plaintiff has been damaged in an amount in excess of $389,881.91 and such other amounts to be proved at trial.

## COUNT V
## FRAUD IN THE INDUCEMENT

47. Plaintiff re-alleges and incorporates Paragraphs 1 through 46 above as if fully stated herein.

48. Synergie represented to MFI that it was able to "manage the entirety of [MFI's] supply chain" and would further be able to "offer door-to-door solutions for an effective and secure transport solution for [MFI's] bulk liquid merchandise." Synergie further held itself out and represented to MFI as being able to provide "expertise in implementing and integrating multi level logistics processes" and a "tailored, turnkey, door-to-door logistics solution" for the transport of MFI's Loads. Synergie further represented to MFI that it was capable of providing

expertise in the transport of refrigerated bulk liquid cargo utilizing its "Big Red Liquiride ™" technology. *See* **Exhibit A**. These representations were material because MFI relied upon them in making the decision to employ Synergie to transport the Loads.

49. However, Synergie knew these representations to be false because Synergie knew that it was apparently unable to fully ensure the effective and safe transport of the Loads and thus could not manage the entirety of MFI's supply chain worldwide.

50. Synergie's misrepresentations in this regard were made with the intention that MFI would rely upon them because Synergie knew that MFI was in the market for efficient door-to-door transportation of its products.

51. MFI relied upon Synergie's material misrepresentations in choosing to enter into the agreement with Synergie for transport of the Loads.

52. MFI's reliance upon Synergie's material misrepresentations was to MFI's detriment because it led directly to the damage to the Loads.

53. As a proximate result of the Defendant's fraud in the inducement the Plaintiff has been damaged in an amount in excess of $389,881.91 and such other amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mitsui Foods, Inc., demands judgment against Synergie for compensatory damages, including any and all special, consequential, and incidental damages. Additionally, Plaintiff further demands attorneys' fees, interest, costs, and such other relief as the Court deems just and proper.

Dated: Jersey City, New Jersey
       June 28, 2019

FREEHILL HOGAN & MAHAR LLP

*[signature]*

---

William J. Pallas
William H. Yost
Freehill Hogan & Mahar LLP
549 Summit Ave.
Jersey City, New Jersey 07306-2701
(973) 623-5514
pallas@freehill.com
*Attorneys for MFI*